☒ FILED    ☐ LODGED

**Aug 15 2025**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

Jason Adam Jensen
Pro Se Plaintiff
919 North Stone Ave #5305
Tucson, AZ 85705
(402) 598-1285
jasonajensen@gmail.com

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA
## TUCSON DIVISION

Jason Adam Jensen,
Plaintiff,

v.

STATE OF ARIZONA; CITY OF WILLCOX;
WILLCOX POLICE FORCE; DAYS INN (Willcox,
AZ); TEXACO (Willcox, AZ); SINGRID
SHECKLING; SCHICKLING SINGRID TRUST;
TUCSON POLICE DEPARTMENT; ARIZONA
ADULT PROTECTIVE SERVICES;
CONNECTIONS; COMMUNITY BRIDGES;
PIMA COUNTY; and NORTHERN COCHISE
COMMUNITY HOSPITAL,

Case No. CV-25-_464___-TUC-_JGZ___

## COMPLAINT FOR SYSTEMIC DISCRIMINATION, CIVIL RIGHTS VIOLATIONS, AND HARM

Plaintiff, Jason Adam Jensen, appearing pro se, hereby files this Complaint for
damages and injunctive relief against the above-named Defendants, asserting
violations of federal and state law arising from a pattern of systemic discrimination,
failures to accommodate, and intentional acts that caused severe harm and distress.

## I. INTRODUCTION

1. This action seeks to redress grave violations of Plaintiff's civil rights and to obtain relief for significant harm suffered as a direct consequence of Defendants' discriminatory policies, practices, and deliberate indifference to Plaintiff's known disability.

2. Plaintiff, an autistic individual, has been subjected to a series of escalating events, beginning with unlawful actions by his landlord, which precipitated a severe mental health crisis (autistic meltdown and burnout). This crisis was then exacerbated by the systemic failure of state and municipal entities, and private businesses, to provide reasonable accommodations or appropriate assistance, leading to Plaintiff being left in dangerous conditions without support.

3. This Complaint asserts that the actions of the Defendants, individually and in concert, constitute a pattern of discrimination against individuals with disabilities, and that the harm suffered by Plaintiff was a foreseeable and direct result of these unlawful policies and practices.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, including the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and 42 U.S.C. § 1983.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims

pursuant to 28 U.S.C. § 1367, as these claims form part of the same case or controversy as the federal claims.

6. Venue is proper in the United States District Court for the District of Arizona, Tucson Division, pursuant to 28 U.S.C. § 1391(b) and (c), as a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants reside or are found in this judicial district.

## III. PARTIES

7. Plaintiff Jason Adam Jensen is an adult resident of Tucson, Arizona, and brings this action pro se. Plaintiff is an individual with a disability, specifically Autism Spectrum Disorder, which substantially limits one or more major life activities.

8. Defendant State of Arizona is a sovereign state and public entity responsible for establishing and enforcing statewide policies and procedures, including those related to disability accommodations and mental health services.

9. Defendant City of Willcox is a municipality within Cochise County, Arizona, with its principal office located at 101 S Railroad Ave, Willcox, AZ 85643.

10. Defendant Willcox Police Force is a law enforcement agency operating under the authority of the City of Willcox, with its principal office located at 320 W Rex Allen Dr, Willcox, AZ 85643. Its officers act under color of state law.

11. Defendant Days Inn (Willcox, AZ) is a place of public accommodation located at 724 North Bisbee Avenue, Willcox, AZ 85643.

12. Defendant Texaco (Willcox, AZ) is a place of public accommodation located at

1501 North Fort Grant Road, Willcox, AZ 85643.

13. Defendant Singrid Sheckling is an individual residing in Tucson, Arizona, and was Plaintiff's landlord at all times relevant to this Complaint and resides at 4449 East 13th Street, Tucson, AZ 85711.

14. Defendant SCHICKLING SINGRID TRUST is a legal entity that owns the property located at 4449 East 13th Street, Tucson, AZ 85711, and through its trustee, Singrid Sheckling, leased the property to Plaintiff.

15. Defendant Tucson Police Department (TPD) is a law enforcement agency operating under the authority of the City of Tucson, with its principal office located at 270 S Stone Ave, Tucson, AZ 85701. Its officers act under color of state law.

16. Defendant Arizona Adult Protective Services (APS) is a state agency responsible for investigating and addressing abuse, neglect, and exploitation of vulnerable adults in Arizona, with a regional office located at 600 S Country Club, Tucson, AZ 85716.

17. Defendant Connections (520) 301-2400, located at 2802 East District Street, Tucson, AZ 85714, is a medical facility providing mental health services, including crisis stabilization.

18. Defendant Community Bridges is a medical facility providing mental health services, including crisis stabilization and outpatient care, with a primary Tucson location at 2950 North Dodge Boulevard, Tucson, AZ 85716.

19. Defendant Pima County is a political subdivision of the State of Arizona,

responsible for the operation of its Superior Court and other county services, with its principal office located at 110 West Congress Street, Tucson, AZ 85701.

20. Defendant Northern Cochise Community Hospital is a medical facility located at 901 W Rex Allen Dr, Willcox, AZ 85643, which provided emergency medical services to Plaintiff on June 3, 2025.

## IV. FACTUAL ALLEGATIONS

21. Plaintiff entered into a lease agreement with Defendant Singrid Sheckling for an apartment located at 4449 East 13th Street, Tucson, AZ 85711. Plaintiff consistently paid rent, including for the month of June 2025, via Zelle from his Navy Federal account.

## A. Landlord's Alleged Misconduct and Unlawful Eviction

22. During the tenancy, Defendant Singrid Sheckling engaged in a pattern of escalating misconduct, including attempting to coerce Plaintiff into performing labor not covered by the lease and issuing "instructions for the day" regarding property maintenance.

23. On or about May 20, 2025, a contractor performed roof work on the property. Plaintiff alleges that paint thinner was used, causing the roof to leak over Plaintiff's bed, rendering the residence dangerous and uninhabitable. Defendant Singrid Sheckling dismissed this serious health hazard.

24. On or about May 31, 2025, Defendant Singrid Sheckling physically grabbed Plaintiff's arm, leaving visible bruises. Plaintiff immediately communicated that

this action was unacceptable and caused him significant distress. Defendant Singrid Sheckling later admitted to the physical contact, claiming it "meant love," while simultaneously accusing Plaintiff of "insanity" for asserting he was hurt and later claiming he was "delusional" and "hallucinating."

25. Following this incident, Defendant Singrid Sheckling, without proper legal process or court order, unilaterally terminated Plaintiff's tenancy, claiming he had "abandoned" the apartment despite having paid rent for June 2025.

26. Defendant Singrid Sheckling then engaged in self-help eviction, entering Plaintiff's apartment without notice or permission, boxing up his personal belongings, and refusing to return his $1,100 security deposit and the $1,000 paid for June rent. She later refused to provide an itemized inventory of seized property, which Plaintiff estimates to be over $777 in personal items, and refused to facilitate a safe return of his property.

27. Defendant Singrid Sheckling's actions, including her false accusations and use of Plaintiff's autism and mental health history to discredit him, constituted severe emotional abuse and defamation. This conduct was in retaliation for Plaintiff asserting his rights and reporting her actions.

28. Defendant SCHICKLING SINGRID TRUST, as the owner of the property, is implicated in these actions by allowing Defendant Singrid Sheckling to lease the property and engage in these unlawful practices. The lease contract named Singrid Sheckling, not the Trust, as the lessor, and the Trust is alleged to function as an alter ego for Singrid Sheckling, used to deter legal action and

obfuscate recovery.

## B. Forced Departure and Stranding in Willcox

29. The escalating pattern of Defendant Singrid Sheckling's misconduct, including the alleged battery, unlawful eviction, and emotional distress, severely exacerbated Plaintiff's autistic meltdown and burnout.

30. As a direct result of this unbearable duress and the effective loss of his home, Plaintiff was compelled to leave Tucson. While attempting to travel, Plaintiff's car broke down, and his phone ceased functioning, leaving him stranded in Willcox, Arizona, without communication or resources.

31. Plaintiff was explicitly warned by others about the severe risk of heat stroke due to being on foot without water in the Arizona desert, a danger that was known and foreseeable given his stranded situation.

## C. Willcox Incidents and Systemic Failure to Accommodate

32. On June 5, 2025, and on at least two subsequent occasions, Plaintiff, while in a state of severe autistic meltdown and burnout, encountered officers from the Defendant Willcox Police Force.

33. During these encounters, Plaintiff invoked his rights under 42 U.S.C. § 12101 (ADA) and repeatedly requested accommodations and assistance, including medical help.

34. Despite Plaintiff's visible distress, communicated disability (autism), and explicit statements that he had no means of communication, Defendant Willcox Police

Force officers refused to render `parens patriae` assistance or transport him to a facility with inpatient mental health services. Instead, they repeatedly enforced trespass orders, forcing Plaintiff to leave various businesses.

35. Defendant City of Willcox and its Police Force maintain discriminatory policies and practices that prioritize the enforcement of trespass and criminalization over the appropriate transportation and care of individuals experiencing mental health crises, particularly those with disabilities, in violation of the ADA and Equal Protection. This policy is evident in the lack of local inpatient mental health facilities in Willcox, forcing a choice between lengthy transport (which was not provided) or criminalization.

36. Defendant Days Inn (Willcox, AZ) and Defendant Texaco (Willcox, AZ), as places of public accommodation, failed to provide reasonable accommodations to Plaintiff in his vulnerable condition, instead ejecting him from their properties despite his communicated need for a place to sleep and his ability to pay.

## D. Medical System's Contribution to Harm and Misdiagnosis

37. Following his return to Tucson, Plaintiff sought help at Community Bridges and the Crisis Response Center (CRC). Plaintiff informed staff of his court hearing on June 10, 2025.

38. Despite this, Community Bridges and CRC policies required Plaintiff to surrender his phone and denied him access to terminals, preventing him from searching his case, calling the court, or otherwise conducting legal business.

This directly led to his inability to appear at his hearing.

39. Plaintiff informed Community Bridges that he was autistic and believed he was misdiagnosed as bipolar. However, the facility repeatedly diagnosed him as bipolar, which can be diagnosed in minutes based on "psychosis," while autism requires weeks of extensive diagnosis. This reflects a systemic pattern of misdiagnosis for expediency and alleged mass malpractice, treating autistic meltdowns with drugs like antipsychotics that, as established in Plaintiff's sealed civil case, can create drug dependency, damage the ability to handle future stress, and exacerbate PTSD.

40.   Plaintiff was repeatedly discharged from these facilities because he was not suicidal or homicidal and was unwilling to take certain drugs, despite being in severe meltdown and burnout and needing a safe place to establish a routine for recovery. This policy demonstrates a refusal to provide the same support to autistic individuals as to those diagnosed with bipolar disorder, where the system often prioritizes beds and "dangerousness" over comprehensive care.

## E. Tucson Incidents and Further Systemic Indifference

41. On July 13, 2025, while still homeless and in a vulnerable state, Plaintiff called 911 from 4449 East 13th Street, Tucson, AZ, seeking assistance to regain access to his former residence.

42. Plaintiff fully explained his situation, including his homelessness and the circumstances of his prior eviction, to Officer C. Nichols of the Defendant

Tucson Police Department.

43. Despite Plaintiff's clear distress and need for help, Officer C. Nichols allegedly informed Plaintiff that his situation was a "civil matter" and proceeded to escort him off the property. This action constituted a failure to provide `parens patriae` assistance or reasonable accommodation to a disabled individual in crisis, and a discriminatory refusal to intervene in a situation that posed a foreseeable risk of harm.

44. Following this encounter, Defendant Tucson Police Department, through Officer C. Nichols, offered "help" by submitting a report to Defendant Arizona Adult Protective Services, alleging "Self Neglect" by Plaintiff.

45. Plaintiff alleges that neither Community Bridges nor the Crisis Response Center, despite their knowledge of his homelessness and vulnerable state, ever called Adult Protective Services on his behalf.

46. Defendant Arizona Adult Protective Services, by initiating an investigation and reporting Plaintiff for "Self Neglect" in an impossible, life-threatening situation (due to weather and lack of resources), attempted to show Plaintiff was incompetent and further criminalize his disability, rather than providing actual support or accommodation. This action demonstrated a failure to understand or accommodate the complexities of autistic meltdown and burnout, and the systemic barriers Plaintiff faced.

**F. Medical Facilities' Contribution to Harm and Misdiagnosis**

47. Defendant Connections, located at 2802 East District Street, Tucson, AZ, discharged Plaintiff during a severe meltdown, leaving him with nowhere safe to go.

48. This discharge caused Plaintiff to experience three panic attacks while attempting to navigate public transportation, repeatedly forcing him to return to security at the Crisis Response Center (CRC) due to fear of getting lost.

49. Defendant Connections characterized Plaintiff's burnout as "situational," attributing it to Defendant Singrid Sheckling's actions (being removed from his home and battered), but failed to help Plaintiff address or remove the underlying causes of his burnout.

50. Defendant Connections' policy of removing Plaintiff's phone and denying him access to any resources while in their care, under the premise that "emergency mental health help requires that people be treated dangerous and under at least minimum security," created a counterproductive and harmful environment for Plaintiff's recovery.

51. Defendant Community Bridges engaged in malpractice by perpetuating the cycle of requiring proof for autism while allegedly accepting no evidence for bipolar disorder, and by failing to assist Plaintiff in obtaining an accurate autism diagnosis. This contributed to Plaintiff being subjected to inappropriate treatments and a lack of necessary support.

## G. Pima County and the Dismissed Writ

52. Plaintiff had previously filed a Petition for Writ of Habeas Corpus (Case No. 2025-2553) in the Pima County Superior Court well before June 2025, challenging the systemic lack of ADA accommodations processes in mental health detention.

53. Defendant Pima County, through its Superior Court, dismissed this writ of habeas corpus instead of providing a proper ADA accommodation process, demonstrating a systemic failure to address federal civil rights claims related to mental health detention and a denial of due process. This dismissal further exacerbated Plaintiff's distress and contributed to his ongoing vulnerable state.

## H. Northern Cochise Community Hospital's Failure to Render Aid

54. On June 3, 2025, Plaintiff was transported by ambulance to Defendant Northern Cochise Community Hospital for a severe meltdown.

55. Despite Plaintiff's clear medical emergency and documented need for assistance, Defendant Northern Cochise Community Hospital allegedly failed to render adequate aid or provide appropriate inpatient care for his autistic meltdown, contributing to his subsequent discharge into an unsupported and dangerous situation. This failure to provide necessary medical care for a disabled individual in crisis constitutes negligence and discrimination.

## I. Broader Context and Prior Legal Actions

56. Plaintiff had previously attempted to secure universal disability accommodations from Defendant State of Arizona (via AZ DMV) for

communication needs, as evidenced in his email correspondence, but was denied an effective method.

57. Plaintiff has filed a sealed civil case (CV-25-00435-JGH) in the United States District Court for the District of Arizona against pharmaceutical companies, the State of Arizona, and Robert F. Kennedy Jr., alleging consumer fraud, negligence, and discrimination related to antipsychotic drugs. This case establishes the long-term effects of forced medication, including antipsychotic-induced dopamine supersensitivity and tardive dyskinesia, which Plaintiff asserts create drug dependency and degrade the ability to handle stress, directly contributing to the conditions that led to his Willcox incidents.

## V. CAUSES OF ACTION

### COUNT I: ADA DISCRIMINATION (Against State of Arizona)

58. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

59. Defendant State of Arizona, through its agencies and policies, has failed to provide a universal, effective, and mandatory method of communicating Plaintiff's disability (autism) and communication needs to law enforcement and other public services.

60. This failure constitutes discrimination on the basis of disability, denial of reasonable accommodation, and a violation of Plaintiff's rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

### COUNT II: ADA DISCRIMINATION (Against City of Willcox and Willcox Police

Force)

61. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

62. Defendant City of Willcox and its Police Force, acting under color of state law, engaged in discriminatory practices and maintained policies that: a. Failed to provide reasonable accommodations to Plaintiff during his mental health crisis. b. Prioritized enforcement of trespass over providing appropriate medical assistance or transport for individuals experiencing autistic meltdowns/burnout. c. Demonstrated deliberate indifference to Plaintiff's known disability and the foreseeable risk of harm (including heat stroke) by repeatedly leaving him stranded without resources.

63. These actions constitute discrimination on the basis of disability and a violation of Plaintiff's rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Equal Protection Clause of the Fourteenth Amendment.

**COUNT III: ADA DISCRIMINATION (Against Days Inn and Texaco)**

64. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

65. Defendants Days Inn and Texaco, as places of public accommodation, failed to provide reasonable modifications in their policies, practices, or procedures necessary to accommodate Plaintiff's disability.

66. This failure resulted in the discriminatory ejection of Plaintiff from their properties, despite his ability to pay and his communicated need for assistance, in violation of Title III of the Americans with Disabilities Act, 42

U.S.C. § 12182.

## COUNT IV: ADA DISCRIMINATION IN LEASING (Against Singrid Sheckling and SCHICKLING SINGRID TRUST)

67. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

68. Defendants Singrid Sheckling and SCHICKLING SINGRID TRUST engaged in discriminatory practices in housing by failing to provide reasonable accommodations related to Plaintiff's disability and by retaliating against him for asserting his rights, in violation of the Fair Housing Act and the Americans with Disabilities Act.

## COUNT V: CIVIL RIGHTS VIOLATIONS (42 U.S.C. § 1983) (Against City of Willcox and Willcox Police Force)

69. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

70. Defendants City of Willcox and its Police Force, acting under color of state law, subjected Plaintiff to a deprivation of his rights, privileges, or immunities secured by the Constitution and laws, including but not limited to his rights under the Fourth, Fifth, and Fourteenth Amendments, by: a. Implementing and enforcing policies that led to the discriminatory treatment of individuals with mental health disabilities. b. Exhibiting deliberate indifference to Plaintiff's serious medical needs and vulnerable condition. c. Effectuating a de facto seizure of Plaintiff's liberty by repeatedly forcing him from locations without providing safe alternatives or necessary assistance, contributing to his

endangerment.

## COUNT VI: UNLAWFUL EVICTION AND SELF-HELP (Against Singrid Sheckling and SCHICKLING SINGRID TRUST)

71. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

72. Defendants Singrid Sheckling and SCHICKLING SINGRID TRUST unlawfully evicted Plaintiff from his residence without a court order, despite his rent being paid, and engaged in prohibited self-help measures, in violation of the Arizona Residential Landlord and Tenant Act, A.R.S. § 33-1367.

## COUNT VII: BATTERY (Against Singrid Sheckling)

73. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

74. Defendant Singrid Sheckling intentionally caused harmful or offensive contact with Plaintiff's person by physically grabbing his arm, resulting in bruising, which constitutes battery.

## COUNT VIII: THEFT/CONVERSION OF PROPERTY (Against Singrid Sheckling and SCHICKLING SINGRID TRUST)

75. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

76. Defendants Singrid Sheckling and SCHICKLING SINGRID TRUST unlawfully took possession of Plaintiff's personal belongings, valued at over $777, and refused to return them or provide an inventory, constituting theft and/or conversion of

property.

## COUNT IX: UNLAWFUL WITHHOLDING OF RENT AND DEPOSIT (Against Singrid Sheckling and SCHICKLING SINGRID TRUST)

77. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

78. Defendants Singrid Sheckling and SCHICKLING SINGRID TRUST unlawfully withheld Plaintiff's $1,100 security deposit and $1,000 paid for June rent, in violation of the Arizona Residential Landlord and Tenant Act.

## COUNT X: DEFAMATION (Against Singrid Sheckling)

79. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

80. Defendant Singrid Sheckling made false and defamatory statements about Plaintiff, including accusing him of "insanity," being "dangerous," "threatening," "delusional," and "hallucinating," to third parties and in communications with Plaintiff, with malice and intent to harm Plaintiff's reputation.

## COUNT XI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) (Against Singrid Sheckling)

81. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

82. Defendant Singrid Sheckling engaged in extreme and outrageous conduct, including physical assault, unlawful eviction, seizure of property, and false accusations, with the intent to cause, or with reckless disregard of the probability of causing, severe emotional distress to Plaintiff. This conduct did, in

fact, cause Plaintiff severe emotional distress.

## COUNT XII: FRAUD AND EXPLOITATION OF A VULNERABLE ADULT (Against Singrid Sheckling and SCHICKLING SINGRID TRUST)

83. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

84. Defendants Singrid Sheckling and SCHICKLING SINGRID TRUST, knowing Plaintiff's vulnerability as an autistic individual, engaged in fraudulent conduct and exploitation by preying upon Plaintiff's openness about his autism and mental health history for personal gain under false pretenses, in violation of Arizona law.

## COUNT XIII: ATTEMPTED TRAFFICKING/FORCED LABOR (Against Singrid Sheckling and SCHICKLING SINGRID TRUST)

85. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

86. Defendants Singrid Sheckling and SCHICKLING SINGRID TRUST, through the use of housing and Plaintiff's property as leverage, attempted to coerce Plaintiff into performing labor under threat of adverse consequences, which constitutes attempted trafficking and/or forced labor in violation of federal law. The SCHICKLING SINGRID TRUST is implicated as it owns the property and allowed Singrid Sheckling to lease it, and a trust cannot legally receive labor for such purposes.

## COUNT XIV: NEGLIGENCE (Against SCHICKLING SINGRID TRUST)

87. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

88. Defendant SCHICKLING SINGRID TRUST owed a duty to Plaintiff as a tenant to maintain a safe and habitable property and to ensure lawful tenancy practices.

89. Defendant SCHICKLING SINGRID TRUST breached this duty by allowing the roof to leak due to contractor actions (paint thinner), failing to address habitability issues, and permitting Defendant Singrid Sheckling to violate state and local tenancy laws.

90. This negligence directly caused harm to Plaintiff, including property damage, displacement, and emotional distress.

## COUNT XV: ALTER EGO (Against SCHICKLING SINGRID TRUST)

91. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

92. Defendant SCHICKLING SINGRID TRUST operates as an alter ego for Defendant Singrid Sheckling, with such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.

93. Defendant Singrid Sheckling controls the Trust and uses it to perpetrate fraud, violate state and local tenancy laws, and obfuscate recovery for her actions, blurring the lines of responsibility.

94. Adherence to the fiction of separate corporate existence would sanction fraud or promote injustice against Plaintiff.

## COUNT XVI: ADA DISCRIMINATION (Against Tucson Police Department)

95. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

96. Defendant Tucson Police Department, through its officer(s) acting under color of state law, engaged in discriminatory practices and demonstrated deliberate indifference to Plaintiff's known disability and urgent needs on July 13, 2025.

97. Specifically, TPD failed to provide `parens patriae` assistance or reasonable accommodation to Plaintiff, a disabled individual in crisis, by dismissing his situation as a "civil matter" and escorting him off his property while he was homeless and in a potentially life-threatening situation (due to weather and lack of resources).

98. This action constitutes discrimination on the basis of disability and a violation of Plaintiff's rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Equal Protection Clause of the Fourteenth Amendment.

## COUNT XVII: DISCRIMINATORY NEGLECT AND MALPRACTICE (Against Arizona Adult Protective Services)

99. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

100.   Defendant Arizona Adult Protective Services, despite being a state agency tasked with protecting vulnerable adults, engaged in discriminatory neglect and alleged malpractice by: a. Failing to proactively intervene or investigate Plaintiff's homelessness and severe vulnerability, despite his documented interactions with Community Bridges and CRC, who allegedly did not report his homelessness. b. Reporting Plaintiff for "Self Neglect" in an impossible, life-threatening situation, thereby attempting to show Plaintiff was incompetent

and further criminalize his disability, rather than providing actual support or accommodation.

101.  These actions demonstrate a systemic failure to understand or accommodate the complexities of autistic meltdown and burnout, and the severe systemic barriers Plaintiff faced, constituting discrimination and a violation of Plaintiff's rights under the ADA and Equal Protection.

**COUNT XVIII: ADA DISCRIMINATION AND NEGLIGENCE (Against Connections)**

102.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

103.  Defendant Connections, as a medical facility providing mental health services, engaged in discriminatory practices and negligence by: a. Discharging Plaintiff during a severe autistic meltdown, leaving him without a safe place to go, which directly caused him to experience multiple panic attacks and fear of getting lost. b. Characterizing Plaintiff's burnout as "situational" and failing to address or remove the underlying causes of his burnout, despite acknowledging they were caused by his landlord's actions. c. Implementing a policy of removing Plaintiff's phone and denying him access to resources, under the premise that "emergency mental health help requires that people be treated dangerous and under at least minimum security," which created a counterproductive and harmful environment for Plaintiff's recovery.

104.  These actions constitute discrimination on the basis of disability and negligence, violating Plaintiff's rights under the ADA and contributing to his

ongoing harm.

**COUNT XIX: MALPRACTICE AND DISCRIMINATION (Against Community Bridges)**

105.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

106.    Defendant Community Bridges engaged in malpractice and discriminatory practices by: a. Perpetuating a cycle of requiring proof for autism while allegedly accepting no evidence for bipolar disorder, leading to misdiagnosis and inappropriate treatment. b. Failing to assist Plaintiff in obtaining an accurate autism diagnosis, despite his self-identification and documented needs. c. Discharging Plaintiff while he was in severe meltdown and burnout, without providing a safe place or necessary support, contributing to his homelessness and further distress.

107.    These actions constitute malpractice and discrimination on the basis of disability, violating Plaintiff's rights under the ADA and contributing to his ongoing harm.

**COUNT XX: ADA DISCRIMINATION AND DENIAL OF DUE PROCESS (Against Pima County)**

108.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

109.    Defendant Pima County, through its Superior Court, engaged in discriminatory practices and denied Plaintiff due process by: a. Dismissing Plaintiff's Petition for Writ of Habeas Corpus (Case No. 2025-2553) for lack of a

proper ADA accommodations process, rather than providing the mandated accommodation. b. This dismissal demonstrated a systemic failure to address federal civil rights claims related to mental health detention and a denial of due process, exacerbating Plaintiff's distress and contributing to his ongoing vulnerable state.

110.    These actions constitute discrimination on the basis of disability and a violation of Plaintiff's rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

## COUNT XXI: NEGLIGENCE AND FAILURE TO RENDER AID (Against Northern Cochise Community Hospital)

111.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

112.    Defendant Northern Cochise Community Hospital, as a medical facility providing emergency services, engaged in negligence and discriminatory practices by: a. Failing to render adequate aid or provide appropriate inpatient care for Plaintiff's severe autistic meltdown on June 3, 2025, despite his clear medical emergency and documented need for assistance. b. Contributing to Plaintiff's subsequent discharge into an unsupported and dangerous situation.

113.    These actions constitute negligence and discrimination on the basis of disability, violating Plaintiff's rights under the ADA and contributing to his ongoing harm.

## VI. DEMAND FOR RELIEF

WHEREFORE, Plaintiff Jason Adam Jensen respectfully requests that this Court enter judgment against Defendants and grant the following relief:

1. **Declaratory Judgment**: Declaring that Defendants' actions, policies, and practices, as alleged herein, are unlawful and discriminatory under federal and state law.

2. **Injunctive Relief**: a. Mandating Defendant State of Arizona to implement a universal, effective, and mandatory method of communicating disability and accommodation needs across all state agencies, particularly for law enforcement interactions. b. Requiring Defendant City of Willcox and its Police Force to adopt non-discriminatory crisis response protocols, including the appropriate transportation and care of individuals experiencing mental health crises, in compliance with the ADA and Equal Protection. c. Preventing Defendants Singrid Sheckling and SCHICKLING SINGRID TRUST from further unlawful eviction, property seizure, harassment, or any actions constituting attempted trafficking or exploitation. d. Requiring Defendant Tucson Police Department to adopt non-discriminatory crisis response protocols, including appropriate `parens patriae` assistance and reasonable accommodations for individuals with disabilities in crisis. e. Mandating Defendant Arizona Adult Protective Services to revise its policies and training to ensure that reports of "Self Neglect" for individuals with disabilities are not used to criminalize or

deem incompetent those facing systemic barriers and lack of accommodation, but rather to provide genuine support and resources. f. Requiring Defendant Connections to revise its discharge policies and practices to ensure safe and appropriate transitions for individuals experiencing autistic meltdown and burnout, and to provide reasonable accommodations regarding communication access. g. Mandating Defendant Community Bridges to revise its diagnostic and treatment protocols to ensure accurate diagnosis of autism and to provide appropriate, non-discriminatory care for autistic individuals experiencing burnout and meltdown. h. Requiring Defendant Pima County to implement a proper ADA accommodation process within its Superior Court for individuals challenging mental health detentions, and to ensure that writs of habeas corpus are not dismissed for lack of such process. i. Mandating Defendant Northern Cochise Community Hospital to revise its protocols for treating individuals experiencing mental health crises, particularly those with disabilities, to ensure adequate aid and appropriate inpatient care are rendered.

3. **Compensatory Damages**: For all financial losses, including but not limited to, rent paid ($1,000), security deposit withheld ($1,100), value of stolen/converted personal property (over $777), medical costs incurred due to Defendants' actions, and travel expenses incurred as a direct result of Defendants' misconduct.

4. **Punitive Damages**: For Defendants' malicious, willful, reckless, and/or

deliberately indifferent conduct.

5. **Treble Damages**: Where applicable under specific statutes.

6. **Attorney Fees and Costs**: All costs and reasonable attorney fees incurred in bringing this action, as permitted by law.

7. **Such Other and Further Relief** as this Court deems just and proper.

## VII. CONCLUSION

This action seeks to ensure that individuals with disabilities are afforded equal protection and reasonable accommodations under the law, and that public entities and private actors are held accountable for policies and practices that criminalize and endanger vulnerable populations.

DATED: August 13, 2025

Respectfully submitted,

/s/ Jason Adam Jensen Jason Adam Jensen, Pro Se

## CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE

I, Jason Adam Jensen, certify that Artificial Intelligence was used in the preparation of this document. I have reviewed and verified the accuracy and appropriateness of the AI-generated content and take full responsibility for it as if it were my own work, in accordance with FRCP 11 and all applicable Local Rules.

Generated by Gemini by Google on August 13, 2025.

User is solely responsible for filing this document. If a licensed attorney files this document without independent review, it constitutes a violation of the Open Artificial Intelligence Regulatory Documents Licensing Agreement and the attorney forfeits further access to this playground.